IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-312 |
| WILLIE JORDAN | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

**I.   PRELIMINARY STATEMENT**

Defendant Willie Jordan was a local public official who held positions of trust with two organizations -- his church and a Philadelphia ward. The positions he held gave him virtually unfettered access to the funds of those organizations. Over several years, Jordan abused those positions of trust by systematically embezzling funds, totaling at least $142,991, from the financial accounts of both organizations.

Embezzlement schemes perpetrated by insiders cause tremendous damage to victim organizations, such as Jordan's church and ward, that depend on their limited funding for charitable and public work on behalf their members and the communities they serve. As a church and political leader, Jordan was entrusted to conduct himself with integrity and act in the best interests of the church and the ward. Jordan chose to ignore his obligations and enrich himself at the expense of those he was supposed to serve. He did not need to engage in such conduct. He held a prominent position with a state senator and received a good salary. The defendant's criminal conduct calls for appropriate punishment -- within the applicable guideline range of 10-16 months in prison.

In sentencing a defendant, a court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

## II.   BACKGROUND

On July 17, 2025, the defendant was charged by information to two counts of wire fraud, in violation of 18 U.S.C. § 1343. On July 30, 2025, the defendant pled guilty to the information During his plea colloquy, the defendant admitted to the facts set forth below.

### A.   General Background Facts – Count One

Religious Organization #1 was an organization and a church known to the United States Attorney and located in Philadelphia, Pennsylvania. Religious Organization #1 served several hundred parishioners in the Philadelphia area. Defendant Willie Jordan was a deacon and trustee for Religious Organization #1. Jordan was responsible for managing and overseeing various financial matters involving Religious Organization #1, including collecting funds for Religious Organization #1, depositing those funds in the bank accounts of Religious Organization #1, and paying the expenses of Religious Organization #1. Religious Organization #1 placed Jordan in a position of trust and allowed him to exercise almost total control over the funds of Religious Organization #1. Jordan did not receive a salary from Religious Organization #1. Rather, he received his salary from the Commonwealth of Pennsylvania, where he was a Director of Operations for a state senator.

### B.   The Fraud Scheme Involving Religious Organization #1

From at least as early as January 2020 through at least January 2024, during the time that Jordan served as a deacon and trustee for Religious Organization #1, Jordan exploited Religious Organization #1 for his personal financial benefit. On a regular basis, Jordan improperly issued checks to himself from Religious Organization #1's business checking account (account ending in #1479) at Citizens Bank. Jordan made it appear that such checks were to reimburse him for expenses that he incurred on behalf of Religious Organization #1. In fact, Jordan did not incur

those expenses and simply issued those checks for his personal benefit. Jordan engaged in this activity fraudulently and without the knowledge or permission of Religious Organization #1, its trustees, or members.

Jordan was an authorized signer of checks issued from Religious Organization #1's bank account. Checks issued from the organization's bank account required the signature of two trustees. Jordan improperly, and through misrepresentations to other authorized signers, obtained the signatures of other trustees on the checks that purported to reimburse himself for expenses that he falsely stated he had incurred. Jordan negotiated the checks he improperly issued to himself and used the proceeds for his personal expenses.

To conceal the fraudulent scheme from Religious Organization #1 and authorities, Jordan often included notations in the memo lines of the checks to make them appear legitimate. For example, in many instances, Jordan noted in the memo line an event or similar activity with expenses for which he was requesting reimbursement, such as "Summer Youth Program 2020," "Back to School Program 2021," "Easter Baskets 2022," and "Recognition Day 2022." Jordan wrote the notations to refer to programs that appeared legitimate and that Religious Organization #1 could have engaged in, when in fact, there was no such program and Jordan did not incur those expenses.

As part of this scheme, defendant Jordan issued approximately 82 fraudulent checks to himself totaling approximately $57,384. Jordan successfully negotiated these checks, resulting in significant losses to Religious Organization #1. As described in Count One, one of the checks involved in the fraud and drawn on the account of Religious Organization #1 at Citizens Bank, generated an interstate wire, in furtherance of the fraud, when Jordan negotiated it.

C. <u>**General Background Facts -- Count Two**</u>

Political Organization #1 was one of 66 wards located in Philadelphia, Pennsylvania and was a subdivision of Political Organization #2, which represented the interests of a political party in the City of Philadelphia. Political Organization #1 elected a leader from qualified voters and registered members in Political Organization #1 who were of the same political party as Political Organization #2. From 1996 through April 2025, Jordan was the elected leader of Political Organization #1. Jordan controlled and managed the finances of Political Organization #1 and did not receive a salary from Political Organization #1.

Political Organization #1 was a registered Political Action Committee ("PAC") with the City of Philadelphia. PACs were required to file routine campaign finance reports ("CFRs") detailing the PACs' receipts and expenditures of funds. Jordan filed CFRs for Political Organization #1 as leader of the organization.

D. <u>**The Fraud Scheme Involving Political Organization #1**</u>

From at least as early as January 2020, through at least January 2024, during the time that Jordan served as the elected leader of Political Organization #1, Jordan exploited Political Organization #1 for his personal financial benefit. Jordan opened two bank accounts in name of Political Organization #1 in the Eastern District of Pennsylvania -- one at Sun East Federal Credit Union (account ending in #1182), and the other at Freedom Credit Union (account ending in #8650). Jordan made himself the sole signatory on the accounts in the name of Political Organization #1 and obtained, for both accounts, debit cards which he controlled.

On a regular basis, Jordan improperly conducted financial transactions, through debit card charges, checks, and ATM cash withdrawals, using Political Organization #1's bank accounts to transfer the funds of Political Organization #1 to himself or others, for his personal

benefit. Jordan engaged in this activity fraudulently and without the knowledge or permission of Political Organization #1 or its members.

Jordan repeatedly filed false CFRs with the City of Philadelphia to conceal his fraudulent conduct and create the appearance that Jordan was using the funds of Political Organization #1 for legitimate purposes. Jordan accomplished this by omitting from the CFRs the financial transactions he conducted for his personal benefit using Political Organization #1's funds, reporting false transactions that appeared legitimate, and inflating the value of other legitimate transactions. In doing so, Jordan falsely accounted for the total expenses of Political Organization #1 as reflected in its bank records.

Jordan used Political Organization #1's funds for personal purchases at airlines, car dealerships, furniture stores, grocery stores, and other retail establishments. He also used those funds to pay his personal credit card bills, utility bills, and cellular telephone bills. In or about the summer of 2023, Jordan used the funds of Political Organization #1 to pay more than $12,500 in expenses for a family member's funeral. Jordan engaged in these personal financial transactions without any benefit flowing to Political Organization #1 and without the knowledge or permission of any of its members. As part of this scheme, Jordan defrauded Political Organization #1 and its members of at least $85,607. As described in Count Two, one of Jordan's purchases using the debit card of Political Organization #1, generated an interstate wire in furtherance of the fraud.

### III.   SENTENCING CALCULATION

#### A.   Statutory Maximum Sentence.

The Court may impose the following statutory maximum sentences: for each of Counts One and Two, 20 years' imprisonment, a 3-year period of supervised release, a $250,000 fine,

and a $100 special assessment.

<u>Total Maximum Sentence</u> is: 40 years' imprisonment, a 3-year period of supervised release, a $500,000 fine, and a $200 special assessment. Full restitution of as much as $142,991 also shall be ordered. Forfeiture of $142,991, representing all property that constitutes or is derived from proceeds traceable to the commission of the charged offenses also may be ordered.

**B.     Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| | |
|---|---|
| Base offense level – USSG § 2B1.1(a)(1) | 7 |
| Loss more than $95,000 but less than $150,000 -- USSG § 2B1.1(b)(1)(E) | +8 |
| Abuse of a position of trust -- USSG § 3B1.3 | +2 |
| Timely acceptance of responsibility -- USSG § 3E1.1 | -3 |
| Zero-Point Offender -- USSG § 4C1.1 | -2 |
| Total | 12 |

Jordan has zero criminal history points and is thus in Criminal History Category I. Thus, the guideline range is **10-16** months.

**IV.     ANALYSIS**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### (1) **The nature and circumstances of the offense.**

The nature and circumstances of Jordan's criminal conduct are serious and troublesome. As set forth above, Jordan was in a position of leadership and responsibility with two different organizations that serve the public, his church and his ward, and he abused those positions to enrich himself. He did not just have a bad day. He embezzled from those organizations repeatedly over a period of years, taking funds that should have been used for the parishioners at his church and the community served by his ward. In particular, the church had financial problems that could have been alleviated or at least mitigated had the defendant not committed these crimes. The church is currently closed for repairs and has been closed for several years. The defendant used the funds of the church and his ward for personal purchases at airlines, car dealerships furniture stores, and other retail establishments -- as well as for paying the defendant's personal credit card and utility bills. The defendant took steps to conceal the fraud

through false filings on behalf of the ward and false notations on the checks issued by the church. The nature and circumstances of the offense warrant a within-guidelines sentence.

### (2) **The history and characteristics of the defendant.**

Willie Jordan is a 68-year-old man with a supportive and successful family that includes his wife of approximately 47 years and multiple children and grandchildren. He has done well in his career, attaining a high-level position with a state senator. He does not have substance abuse problems or mental health disorders. He has no criminal history. Unlike so many cases that come before this Court, the defendant's personal history does not offer any explanation for his decision to engage in this criminal conduct. Clearly, the defendant should have known better.

The length of the defendant's criminal fraud activity reflects poorly on his character. This was not a momentary exercise of poor judgment. On a regular basis the defendant embezzled funds from two organizations and had he not been caught, likely would have continued to engage in that conduct. On the positive side, the defendant pleaded guilty to the offense and has paid $67,384 in restitution prior to sentencing. The government recommends that this Court consider these facts in determining where within the guideline range the defendant should be sentenced.[2]

---

[2] The government also understands that the defendant likely will rely on his good works as a public servant in seeking a more lenient sentence. In the context of a downward departure motion, the Third Circuit held that ordinary efforts of a public official in the course of his duties should not warrant leniency at sentencing. In *United States v. Serafini*, 233 F.3d 758 (3d Cir. 2000), the defendant attempted to support a downward departure based on community and charitable service, based in part on letters attesting to his work as a state legislator. The Court stated, "Conceptually, if a public servant performs civic and charitable work as part of his daily functions, these should not be considered in his sentencing because we expect such work from our public servants." Id. at 773 (citations omitted). Rather, the Third Circuit advised, a defendant should receive a departure only for works that are both "substantial" and "personal" in nature. *United States v. Ali*, 508 F.3d 136, 149 (3d Cir. 2007). "More is expected of [those] who enjoy sufficient income and community status[, as] ... they have the opportunities to engage in charitable and benevolent activities." [United States v. Cooper, 394 F.3d 172, 176 (3d Cir.

*continued . . .*

**(3)** **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and**

**(4)** **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

A prison sentence within the applicable guidelines range would appropriately punish the defendant for his criminal activity. A guidelines sentence would promote respect for the law and deter public officials and leaders of organizations in positions of trust from engaging in this type of criminal activity. Crimes like this are difficult to detect, as evidenced by the length of time that the defendant engaged in the crimes here, making it even more essential that the sentence deter those who might use their position with public organizations to engage in this type of activity.

As numerous courts have recognized, fidelity to the guidelines and imposing serious prison sentences serve a particularly important purpose in prosecuting white-collar crime. For instance, the Supreme Court in *Mistretta v. United States*, 488 U.S. 361, 375 n.9 (1989), noted that the Senate Report on the Sentencing Reform Act "gave specific examples of areas in which prevailing sentences might be too lenient, including the treatment of major white-collar criminals." *Accord United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006) ("[T]he Guidelines reflect Congress' judgment as to the appropriate national policy for [white-collar] crimes...."); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (noting the importance of "the minimization of discrepancies between white- and blue-collar offenses"). In *United*

---

2005)] (citations and quotation marks omitted). *Ali*, 508 F.3d at 149.

While unlike *Serafini* and *Ali,* the present case does not involve a motion for a downward departure, this case law is instructive for evaluating claims for leniency based on the good works of a public servant.

*States v. Martin*, the Court of Appeals for the Eleventh Circuit provided the following explanation:

> Our assessment is consistent with the views of the drafters of § 3553. As the legislative history of the adoption of § 3553 demonstrates, Congress viewed deterrence as 'particularly important in the area of white collar crime.' S.Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259. Congress was especially concerned that prior to the Sentencing Guidelines, '[m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business.' *Id.*

455 F.3d 1227, 1240 (11th Cir. 2006).

This is especially true here. The sentence imposed must communicate to Jordan and the public that the justice system will not tolerate this type of corruption. A prison sentence as recommended by the government would send the appropriate message to the community that corrupt public officials will suffer serious consequences for their criminal behavior.

**(5)    The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no need in this case to provide the defendant, an experienced public official, with educational or vocational training. Thus, this statutory factor should not affect the Court's sentencing determination.

**(6)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Considering all the facts and circumstances discussed in this memorandum, the recommended sentence would not result in any unwarranted disparities among similarly situated defendants. Courts regularly sentence defendants to sentences within the guidelines range. The recommended sentence fairly considers this defendant's conduct and the circumstances of his case, and there is no basis to conclude that a sentence within the guidelines range would result in

any disparities.

### (7) The need to provide restitution to any victims of the offense.

This Court need not otherwise fashion a sentence that considers the need for the defendant to pay restitution. The defendant has already paid significant restitution in this case and has the financial ability to continue to make restitution payments.

### VI. GOVERNMENT'S SENTENCING RECOMMENDATION

For all the reasons set forth above, the government requests that this Court impose a sentence within the applicable guideline range of 10 to 16 months in prison. This Court should also order restitution and forfeiture, each in the amount of $142,991, representing the losses to the victims and the criminal proceeds obtained by the defendant. Such a sentence would properly account for all the sentencing factors in the context of this case, particularly the seriousness of the offense, the impact on the victims, and the need to promote respect for the law and deter others from engaging in similar illegal conduct.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Louis D. Lappen*
LOUIS D. LAPPEN
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

      I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

                Samuel Stretton, Esquire
                103 South High Street
                PO Box 3231
                Westchester, PA 19381-3231
                Email: Strettonlaw.Samstretton@gmail.com

                */s Louis D. Lappen*
                LOUIS D. LAPPEN
                Assistant United States Attorney

DATED:  November 12, 2025.